**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JON MISEWICZ et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2593-STA** |
| | ) | |
| **CITY OF MEMPHIS, TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (D.E. # 22) and Defendant's Motion for Summary Judgment (D.E. # 23), both filed on August 12, 2011. Both parties have responded in opposition to the Motions, and the moving parties have filed reply briefs. For the reasons set forth below, Plaintiffs' Motion is **DENIED** and Defendant's Motion is **DENIED**.

## BACKGROUND

### I. Factual Background

In this Fair Labor Standards Acts ("FLSA") case, Plaintiffs are City of Memphis fire fighters who seek overtime compensation for training they are required to complete for certification as paramedics. Both parties have moved for summary judgment on the issue of liability, and Plaintiffs additionally seek judgment as a matter of law on the issue of liquidated damages and a three-year statute of limitations. The following material facts are not in dispute for purposes of these Motions, unless otherwise noted.

The City of Memphis employs approximately 1650 commissioned fire fighters. (Pls.' Statement of Undisputed Facts ¶ 1.) The Memphis Fire Department ("MFD") provides fire protection services for approximately 650,000 individuals over a 346 square-mile service area. (*Id.* ¶ 2.) The MFD provides pre-hospital care and paramedic ambulance services for the City of Memphis. (*Id.* ¶ 3.) Those services are not mandated by the state. (*Id.*) The MFD maintains 33 ambulances that provide advanced life support (i.e. paramedic) services on any given day. (*Id.* ¶ 7.) Fire fighters hired after October 2007 rotate between providing fire fighting activities and paramedic activities. (*Id.* ¶ 8.) Fire fighters hired after October 2007 are required to perform two major functions in their job – they are required to perform as both fire fighters and paramedics. (*Id.* ¶ 9.) Defendant adds that fire fighters hired after October 2007 perform paramedic duties only after they have obtained certification from the state of Tennessee. (Def.'s Resp. to Pls.' Statement of Undisputed Facts ¶¶ 8, 9.) The "Essential Job Function[s]" of a newly hired fire fighter include the provision of emergency medical care: the City's notice of job opening states that some of the essential job functions are "checks pulse and respiration of victim or patient; and administers first responder treatment in response to patient condition." (Pls.' Statement of Undisputed Facts ¶ 10.) Fire fighters that are trained as paramedics are also assigned to work on fire engines or fire trucks. (*Id.* ¶ 11.) While assigned to work on fire engines or fire trucks, they may respond and provide medical services even though they are not on an ambulance. (*Id.*)

The City has adopted a 28-day FLSA work period, meaning fire fighters employed by the MFD are scheduled to work approximately 214 hours every 28 days. (*Id.* ¶¶ 4, 5.) Fire fighters receive additional half-time compensation for regularly scheduled hours worked above the FLSA threshold of 212. (*Id.*) Fire fighters also receive time-and-one-half overtime for unscheduled

overtime or hours worked outside of the normal schedule.  (*Id.* ¶ 6.)

In approximately 1991, the City of Memphis began requiring all newly-hired fire fighters to become certified as basic emergency medical technicians ("EMT-B's").  (*Id.* ¶ 12.)  Approximately ten years later, the City of Memphis began requiring all newly-hired fire fighters to achieve certification as EMT-IV's.  (*Id.* ¶ 13.)  In terms of skills and training, an EMT-IV falls somewhere between an EMT-B and a paramedic.  (*Id.*)  The City of Memphis currently requires fire fighters to obtain their EMT-IV certification within one year of hire.  (*Id.*)  To that end, the MFD provides an EMT training course, and fire fighters receive compensation for the time they spend attending the EMT training.  (*Id.* ¶ 14.)  Fire fighters take the EMT training course at the fire academy and receive compensation for all other training that they are required to participate in at the fire academy.  (*Id.*)

In October 2007, the City of Memphis began requiring all fire fighters hired after that date to obtain certification as paramedics (or what is known as EMT-P) as a condition of employment.  (*Id.* ¶ 15.)  The state of Tennessee sets the minimum requirements, including classroom and practical training, necessary to obtain the paramedic certification.  (Def.'s Statement of Undisputed Facts ¶ 9.)

Similar to its EMT training program, the City offers through the fire academy its own paramedic training program to train employees to the level of EMT-P.  (Pls.' Statement of Undisputed Fact ¶ 18.)  The City does not charge employees tuition to attend its paramedic training course.  (*Id.*)  Although fire fighters can elect to be trained as paramedics through either the City's paramedic program or through a community college program, the majority of the fire fighters hired by the City of Memphis go through the MFD paramedic training course.  (*Id.* ¶ 19.)  The City does not compensate employees enrolled in the City's paramedic training program for the time they spend

in training. (*Id.* ¶ 20.) Likewise, the City does not compensate employees enrolled in the community college paramedic training program for the time they spend in training. (*Id.*) Even though the City does not compensate employees for time in the paramedic training course, the City keeps and maintains records that show what training was received in terms of both hours of training and when the training was received. (*Id.* ¶ 21.)

As part of the new requirement that newly-hired fire fighters obtain their paramedic certification, the City adopted an "Emergency Medical Technician-Paramedic Certification and Recertification Agreement." (*Id.* ¶ 16.) This agreement was to be signed by each fire fighter hired after October 2007. (*Id.*; Def.'s Statement of Undisputed Facts ¶ 8.) The agreement states that, as a condition of employment, the fire fighter must obtain EMT-P (paramedic) certification within three years of employment with the City of Memphis. (Pls.' Statement of Undisputed Facts ¶ 16.)[1] A failure to achieve paramedic certification within that time results in immediate termination. (*Id.*) The agreement does not specify that the training will be performed off-duty and without compensation. (*Id.*) For example, the City did not inform Plaintiff Jon Misewicz ("Misewicz") that the paramedic training would be performed without compensation. (*Id.* ¶ 22.) Misewicz assumed that he would be compensated for the time spent attending paramedic training courses because the MFD compensates fire fighters for time spent attending EMT training courses. (*Id.*)

The paramedic certification requirement is not a state requirement for municipal fire fighters. (*Id.* ¶ 23.) The City has the sole discretion to either end the policy of requiring fire fighters to

---

[1] More recently (*i.e.* in either 2010 or 2011), the City changed its policy to permit fire fighters three years and six months to obtain their paramedic certification; prior to that time, the City's policy was that the fire fighters had three years to obtain paramedic certification. (Pls.' Statement of Undisputed Facts ¶ 17; Def.'s Statement of Undisputed Facts ¶ 7.)

become trained as paramedics or to change the policy. (*Id.*) The ultimate determination to require fire fighters to be certified as paramedics was made by then-MFD Director Richard Arwood. (*Id.* ¶ 24.) The current MFD Director Alvin Benson attended many of the meetings to discuss the City's paramedic training requirement when he was the MFD Deputy-Director. (*Id.*)[2] In making the decision to require all new hires to become certified as paramedics, the City did not discuss whether the City needed to count paramedic training hours as hours worked. (*Id.* ¶ 26.) The City did not engage in any type of debate as to whether the paramedic training should occur either on or off duty. (*Id.*) In making the decision to require new hires to become certified as paramedics, the City did not give any consideration to the application of the FLSA and did not discuss federal wage and hour laws or federal overtime requirements. (*Id.*)

Although at least one city attorney attended the meetings where the paramedic training program was discussed, no legal opinion was requested or provided concerning the applicability of the FLSA to the paramedic training time. (*Id.* ¶ 28.) The City did not communicate with the DOL concerning the City's FLSA obligations with respect to the paramedic training hours. (*Id.* ¶ 29.) The City did not submit a request to DOL for an opinion letter with respect to the compensability of paramedic training hours. (*Id.* ¶ 30.) The City did not request any guidance from the DOL with regard to the compensability of the paramedic training hours. (*Id.* ¶ 31.)

On November 28, 2011, the Court granted the parties an opportunity to engage in additional discovery and Plaintiffs have submitted the following additional facts obtained during the discovery period. On December 27, 2011, Defendant provided supplemental responses to Plaintiffs' requests

---

[2] Plaintiffs have added that Benson is not an expert in the FLSA and that there are no FLSA experts in the MFD. (Pls.'s Statement of Undisputed Facts ¶ 25.)

for production, containing over 1000 pages of documents signed by Plaintiffs. (Pls.' Statement of Add'l Facts ¶¶ 1,2.) Defendant admitted that "some of these documents do not reference the obligation [sic] obtaining a paramedic certification within a specified time." (*Id.* ¶ 2.) The newly disclosed documents included copies of the following forms: Availability of Applicant, City of Memphis Fire Services Division Fire Recruit EMT-IV Certification/Recertification Agreement ("EMT-IV Agreement"), City of Memphis Fire Services Division Fire Recruit and Firefighter/Paramedic-Probationary Firefighter I & II Certification Agreements ("Firefighter I & II Agreement"), Emergency Medical Technician-Paramedic Certification and Recertification Agreement Between City of Memphis Fire Services Division and Fire Recruit ("Paramedic Agreement"), as well as various other responsive documents. (*Id.* ¶ 3.)

The "Availability of Applicant" form that Plaintiffs signed as applicants for a job with the City states that the applicant would be required to become certified as a paramedic but does not state that they would be required to attend such training off-duty and without compensation. (*Id.* ¶ 4.) One hundred eleven (111) of the one hundred eighteen (118) named Plaintiffs signed the Availability of Applicant form, and one hundred seven (107) of those were signed prior to October 2007. (*Id.* ¶ 5.) Forty-seven (47) named Plaintiffs signed EMT-IV and Firefighter I & II Agreements in October or November of 2007; not one of those forty-seven (47) Plaintiffs signed the Paramedic Agreement until September 2008. (*Id.* ¶ 6.) Only thirty-three (33) of one hundred eighteen (118) Plaintiffs signed a Paramedic Agreement on the same date that they signed the EMT-IV Agreement and the Firefighter I & II Agreement. (*Id.* ¶ 7.)

On or around the time he was hired, on October 25, 2007, Plaintiff Robert Shinholt signed a document from the City's Human Resources department which set forth the official terms and

conditions of his employment. (*Id.* ¶ 8.) Those terms and conditions do not contain a paramedic certification requirement. (*Id.*) In September 2008, an email with the subject heading "Fire Recruit Agreement" was sent to MFD management, instructing them to ensure that personnel hired after October 29, 2007, had signed a new agreement. (*Id.* ¶ 9.) The email indicated that while "several" new agreements had been signed, there were still thirty-seven (37) current employees that needed to sign the new agreement. (*Id.*) On September 22, 2008, Plaintiff Shinholt's battalion chief ordered him to sign the Paramedic Agreement and stated that Shinholt would be terminated if he failed to sign it. (*Id.* ¶ 10.)

On September 24, 2008, Shinholt submitted inter-departmental correspondence to his lieutenant complaining of the City's actions in forcing him to sign the Paramedic Agreement. (*Id.* ¶ 11.) The record demonstrates that seventy-four (74) out of the 118 named plaintiffs signed the Paramedic Agreement during the month of September 2008, around the same time Plaintiff Shinholt was forced to sign the very same agreement. (*Id.* ¶ 12.) One plaintiff has never signed a Paramedic Agreement. (*Id.* ¶ 13.) Finally, the City receives notification when an employee has completed the Paramedic Program and has received his or her paramedic license. (*Id.* ¶ 14.)

## II. Plaintiffs' Motion for Partial Summary Judgment

In their Motion for Partial Summary Judgment, Plaintiffs argue that by default their training time to achieve paramedic certification is compensable under the FLSA. According to Plaintiffs, only two possible exceptions exist that would make the training time non-compensable and neither exception applies in this case. First, the training is compensable unless Defendant can establish the following criteria about the training: (1) attendance at the training is outside of the employee's regular working hours; (2) attendance is in fact voluntary; (3) the course, lecture, or meeting is not

directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance. Plaintiffs contend that the paramedic training is directly related to their jobs as MFD fire fighters and is not voluntary. Second, the training is compensable because it is not required by state law. Specifically, Plaintiffs rely on 29 C.F.R. § 553.226(b)(2), a Department of Labor regulation, stating that training time for employees of local government is non-compensable if the training is required for certification by law of a higher level of government such as the state of Tennessee. Plaintiffs argue that in the case at bar the paramedic training is imposed "by the law of the City" and not state law. In the absence of some exception to the rule of compensability, Plaintiffs assert that their training time for paramedic certification must be compensable. Furthermore, Plaintiffs argue that they are entitled to liquidated damages and the FLSA three-year statute of limitations because Defendant cannot show that its decision not to compensate Plaintiffs for the training time was in good faith and that it had reasonable grounds for believing that it was not violating the FLSA.

In its response Defendant City of Memphis denies that Plaintiffs's training time is compensable under the FLSA. Defendant argues that the paramedic training is in fact "voluntary," as the Sixth Circuit has defined the term. Defendant states that it should not be "penalized for allowing individuals without all of the necessary job qualification(s) to earn a living while striving to obtain necessary certifications." Defendant further argues that the paramedic training is not directly related to the fire fighters' jobs because fire fighters are not permitted to perform duties as paramedics until they complete their paramedic training. With respect to the DOL regulation on training time for employees of local government, the City contends that the training is required by the law of state of the Tennessee because the state sets the minimum requirements for the paramedic

certification. Finally, Defendant maintains that even if Plaintiffs can establish liability, Plaintiffs are not entitled to liquidated damages or a three-year statute of limitations. Defendant argues that it had a good faith basis not to compensate Plaintiffs for their training time based on a DOL opinion letter, the fact that overtime determinations are made in the City's human resources department, and not MFD, and the fact that no fire fighter ever demanded overtime for his paramedic training time.

In their reply brief, Plaintiffs argue that in order to establish that the training time is not compensable, Defendant must establish the four factors set out in the general regulation at 29 C.F.R. § 785.27 as well as satisfy the requirements of 29 C.F.R. § 553.226 for local government employees. With respect to 29 C.F.R. § 785.27, Plaintiffs argue that Defendant cannot prove that Plaintiffs voluntarily undertook the training. Additional discovery showed that the majority of the named Plaintiffs did not actually sign the paramedic training agreements at the time they were hired. Defendant also failed to inform Plaintiffs that the training was not compensable. Plaintiffs challenge Defendant's assertion that the paramedic training is not related to Plaintiffs' duties as fire fighters and EMTs. As for the specific exception found at 29 C.F.R. § 553.226, Plaintiffs argue that Defendant, and not the state of Tennessee, requires paramedic training for fire fighters. Therefore, paragraph (b)(2) of the regulation cannot apply. Finally, Plaintiffs reiterate that they are entitled to liquidated damages because Defendant has failed to show that it had a good faith basis for denying Plaintiffs' overtime compensation.

## III. Defendant's Motion for Summary Judgment

In its separate Motion for Summary Judgment, the City of Memphis argues that it is entitled to judgment as a matter of law on the issue of liability. Defendant relies on the exception to compensability found in the regulation at 29 C.F.R. § 553.226(b) as well as a 1999 DOL opinion

letter addressing the compensability of training for fire fighters to maintain an EMT certification. Defendant also discusses a case from the District of Maryland in which Baltimore fire fighters, like Plaintiffs in this case, sought overtime for paramedic training. The Maryland court concluded that the fire fighters were not entitled to overtime for their paramedic training which was required as part of Baltimore's "Firefighter/Paramedic Apprenticeship Program." Based on these authorities, Defendant argues that Plaintiffs' paramedic training is not compensable under the FLSA.

In their response in opposition, Plaintiffs focus on paragraph (b)(2) of the regulation found at 29 C.F.R. § 553.226, which makes an exception for training time for local government employees. Plaintiffs argue that the exception does not apply because the paramedic training is not mandated by a higher level of government such as the state of Tennessee. Plaintiffs point out that each of them was hired as a "Fire Recruit in Fire Services/Firefighting" and upon completion of basic training was employed as "Fire Private II." Plaintiffs argue that the 1999 DOL opinion letter on which Defendant relies is directly contradicted by a 1988 DOL opinion letter where the DOL counseled that EMT training required by fire fighters by "the law of the city" and not state law was compensable training time. Next, Plaintiffs contend that the Baltimore case is distinguishable on its facts. The training program at issue in Baltimore was an apprenticeship program governed by entirely different DOL regulations. In contrast, there is evidence in the case at bar that the named Plaintiffs were not apprentices and were not on notice that their paramedic training would not be paid as hours worked. Lastly, Plaintiffs argue that permitting the City to impose the paramedic training without compensation would frustrate the purposes of the FLSA. Therefore, Plaintiffs argue that the Court should deny Defendant's Motion.

In its reply brief, the City argues that the DOL opinion letter from 1988 is factually

distinguishable from the 1999 opinion letter. Furthermore, the court in the Baltimore fire fighters case cited the 1999 opinion letter with approval. Therefore, the Court should find that the 1999 opinion letter controls in this case.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[3] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Celotex*, 477 U.S. at 324.

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

one-side that one party must prevail as a matter of law."[8]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[10]  Finally, the "judge may not make credibility determinations or weigh the evidence."[11]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[12]

## ANALYSIS

The threshold issue presented in the parties' separate Motions for Summary Judgment is whether Plaintiffs' paramedic training is compensable in light of DOL regulations on training time, including a regulation specifically addressed to training time for public employees.  The Court holds that on the primary issue of liability, issues of material fact remain that preclude summary judgment in favor of either party.  Therefore, each party's Rule 56 Motion must be denied.

### I. The Fair Labor Standards Act

"The FLSA requires employers to pay at least a specified minimum wage for each hour

---

[8] *Id*. at 251-52.

[9] *Celotex*, 477 U.S. at 322.

[10] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[12] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322.

worked, *see* 29 U.S.C. § 206, and overtime compensation for employment in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1)."[13]   Work has been defined to mean any time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."[14]   Whether a given set of facts constitutes "work" for purposes of the FLSA presents a question of law.[15]

In the case at bar, the parties argue that two different Department of Labor regulations on the compensability of time spent in training are relevant.   The Sixth Circuit has held that "as a general rule, the DOL's interpretative regulations under the FLSA constitute a body of experience and informed judgment to which courts may properly resort for guidance."[16]   Plaintiffs argue that the DOL has issued two different regulations on the compensability of training time and that Defendant must establish that both exceptions apply in order to avoid liability.   Defendant disagrees and contends that one regulation applies to training time generally while the second regulation is specifically concerned with training for public employees such as fire fighters.

The Court holds that both regulations are relevant to the issue of whether Defendant must compensate Plaintiffs for their time spent in paramedic training though Defendant need not establish

---

[13] *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002).

[14] *Id.* (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1944)).

[15] *Id.* (citing *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir. 1992)).

[16] *Justice v. Metro. Gov't of Nashville, Davidson Cnty., Tenn.*, 4 F.3d 1387, 1393 (6th Cir. 1993) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944) (quotation marks and ellipsis omitted)).

that both exceptions apply. Both regulations appear to assume that training time is compensable time worked and then go on to define exceptions to that rule. The Court holds that if the undisputed evidence establishes any of the exceptions to compensability, then the exception will shield Defendant from any liability to Plaintiffs for their time spent in the paramedic training. Therefore, the Court will consider both regulations here.

## II.     Training Time for Public Employees

The DOL regulation found at 29 C.F.R. § 553.226 specifically concerns training time for public employees and assumes that employer-required training time is compensable unless one of the exceptions described in the regulation apply.[17]  The regulation states in relevant part:

> (b) While time spent in attending training required by an employer is normally considered compensable hours of work, following are situations where time spent by employees of State and local governments in required training is considered to be noncompensable:
>
> (1) Attendance outside of regular working hours at specialized or follow-up training, which is required by law for certification of public and private sector employees within a particular governmental jurisdiction (e.g., certification of public and private emergency rescue workers), does not constitute compensable hours of work for public employees within that jurisdiction and subordinate jurisdictions.
>
> (2) Attendance outside of regular working hours at specialized or follow-up training, which is required for certification of employees of a governmental jurisdiction by law of a higher level of government (e.g., where a State or county law imposes a training obligation on city employees), does not constitute compensable hours of work.

The Court construes the regulation to set out a general, default rule that time spent in training

_____

[17] Section 553.226 begins by stating that the "general rules for determining the compensability of training time under the FLSA are set forth in §§ 785.27 through 785.32 of this title." 29 C.F.R. § 553.226. The Court will consider the general rules, specifically § 785.27, below.

required by an employer is normally compensable. Paragraphs (b)(1) and (2) go on to define two exceptions to the general rule in the case of public employees such as firefighters. Therefore, the Court holds that under this regulation, Plaintiffs' training time is presumptively compensable unless one of these stated exceptions applies.

## A.    Training Required for Public Employees by a Higher Level of Government

First, the Court holds that as a matter of law, the exception set out in paragraph (b)(2) does not apply to the paramedic training at issue in this case. Paragraph (b)(2) applies to training required for certification of public employees only where the training is imposed specifically on public employees by a higher level of government. In other words, municipal employees would not be compensated for time spent in training mandated by the state specifically for the municipal employees. For example, the Fifth Circuit in *Moreau v. Klevenhagen* considered under what circumstances firearms training mandated by the state of Texas for local law enforcement was compensable.[18] In that case Texas required that local law enforcement complete firearm proficiency training once a year. The Fifth Circuit held that under paragraph (b)(2), the state-mandated training time was not compensable. However, one Texas county required its officers to complete the state-mandated firearms training twice a year. The Fifth Circuit held that the time for firearms training required by the county sheriffs department that exceeded the state's requirements was compensable. The *Moreau* court reasoned that the first round of training was not compensable under paragraph (b)(2) but that the second round of training was because it was required by the law of the county, and not a higher level of government.

---

[18] 956 F.2d 516 (5th Cir. 1992).

In the case at bar, the paramedic training is not specifically imposed on MFD fire fighters or municipal fire fighters generally by the state of Tennessee. Put in the language of paragraph (b)(2), the paramedic certification is not required "by law of a higher level of government" for municipal fire fighters. Plaintiffs correctly argue that the state of Tennessee does not mandate that county or municipal firefighters also be certified as paramedics. Rather, according to Plaintiffs, the MFD has made the choice to require its firefighters to have the paramedic certification. The Court holds that under the facts presented the exception in § 553.226(b)(2) would not apply.[19] The question remains about whether the paramedic training is required strictly by the law of the City of Memphis, as Plaintiffs contend. To reach this issue the Court will consider whether the exception in paragraph (b)(1) of the regulation applies to the paramedic training for MFD fire fighters.

**B.**     **Training Required for Public and Private Sector Employees in a Given Jurisdiction**

Turning to the other exception in § 553.226, paragraph (b)(1) states that training time required for government certification of public and private sector employees in a given jurisdiction is not compensable for public employees in that jurisdiction and in subordinate jurisdictions. In other words, training based on a government regulation mandating certification of an entire class of employees, whether in the public or private sector, would not be compensable hours of work for the public employees who undertake the training. Paragraph (b)(1) mentions emergency rescue workers

---

[19] According to the City, *Moreau* supports its position because it stands for the proposition that training required under state law is not compensable. The City maintains that much like the firearms proficiency training mandated in *Moreau*, the requirements for paramedic training are set by the state of Tennessee and not the city of Memphis. For the reasons explained below, the Court finds that this argument is more relevant to the exception set forth in § 553.226(b)(1).

as an example of one class of employees, whether public or private sector, who would be required to complete government-mandated training without the benefit of compensation for their time spent in training. The Court reads the regulation to mean that emergency rescue workers employed in the public sector, whether by the state, a county, or a municipality, who are required by the state to complete certain training would not be entitled to compensation for their training time. Notably, the exception in paragraph (b)(1) would apply whether the required training was mandated by a state, county, or municipality, so long as the training was required for all employees engaged in a specific occupation or activity in that jurisdiction.

Neither party has briefed the applicability of paragraph (b)(1) to the facts presented in this case, largely, because of the manner in which both parties have framed the relevant issue. Plaintiffs stress the fact that MFD fire fighters are required to complete paramedic training because Defendant has adopted a policy that all fire fighters should obtain paramedic certification. According to Plaintiffs then, the paramedic training is required only by the "law of the City" and not a higher level of government. The Court finds that Plaintiffs' analysis logically points to paragraph (b)(2) and correctly suggests that the exception in that part of the regulation would not apply. Plaintiffs do not, however, address the evidence that employees hired after October 2007 were expected to perform duties both as fire fighters as well as paramedics. Because employees like Plaintiffs were arguably hired to work as paramedics, the relevant issue is whether Plaintiffs were required to hold paramedic certification by the state of Tennessee, and not simply the "law of the City."

For its part, Defendant maintains that the state of Tennessee, and not the City of Memphis, mandates what training is needed to become a certified paramedic. As such, Defendant argues the training is required by the state. The Court finds that Defendant never grapples with the fact that

17

because the state-mandated training is not required only for paramedics employed in the public sector, the exception in paragraph (b)(2) would not apply. Consequently, Defendant ignores Plaintiffs' primary argument that regardless of who establishes the training requirements, MFD fire fighters only undertake the required training because the MFD has made it a condition of their continued employment as fire fighters.

The Court finds that under the circumstances, the exception in paragraph (b)(1) is more relevant to the issue presented. As more fully discussed below, Tennessee law requires that any emergency medical worker, whether as a public or private sector employee, providing certain kinds of specialized care within the state obtain certification as a paramedic. Tennessee also prescribes the training needed to achieve the paramedic certification. Tennessee's certification requirements do not distinguish between paramedics working in the public sector or private sector, meaning the same training is required for all paramedics whether they are employed by a municipal fire department like the MFD or a privately-owned hospital or ambulance service. Under the circumstances, the Court holds that the relevant inquiry in this case then is whether under § 553.226(b)(1), "the training . . . is required by law for certification of public and private sector employees within a particular governmental jurisdiction." Whether paramedic training for MFD fire fighters is required by law depends on whether MFD fire fighters provide a level of emergency medical services that require the paramedic certification. If MFD fire fighters actually provide paramedic care in the course of their duties, then the state of Tennessee requires that they have paramedic certification (and the necessary training). If MFD fire fighters do not actually have duties to provide such care, then the paramedic certification (and the necessary training) is not "required by law." Having arrived at the relevant inquiry, the Court will next consider under what

18

circumstances paramedic training and certification is required under Tennessee law.

## 1. Tennessee Emergency Medical Services Act

The relevant Tennessee law on the training and certification of paramedics is the Tennessee Emergency Medical Services Act ("the Act"), Tenn. Code Ann. § 68–140–301 et seq. The Act defines "emergency medical services" ("EMS") to mean "the services utilized in responding to the perceived need for immediate medical care in order to prevent loss of life or aggravation of illness or injury."[20] The Act "applies to each person providing [EMS] within the state"[21] and requires that any person providing EMS in Tennessee comply with the provisions of the Act, including certification and licensing.[22] Among the categories of recognized EMS providers, the Act defines the emergency medical technician ("EMTs") as an individual licensed to practice emergency medical care,[23] and the emergency medical technician-paramedic ("EMT-P" or "paramedic") as an individual licensed to practice advanced emergency medical care.[24] As EMS providers, EMTs and paramedics must hold an appropriate certification from the state and are subject to discipline for performing "emergency care techniques or procedures without" the proper license, certification, or training.[25]

---

[20] Tenn. Code Ann. § 68–140–303(11).

[21] § 68–140–316.

[22] § 68–140–306(a) ("No person, either as owner, agent or otherwise, shall . . . engage in . . . or the provision of emergency medical services in the state, unless such person complies with this part and regulations pursuant to this part.").

[23] § 68–140–303(12).

[24] § 68–140–303(13).

[25] § 68–140–311(a)(8).

The Act also created the Tennessee Emergency Medical Services Board ("the Board") and granted the Board authority to promulgate regulations on the certification of EMS personnel like EMTs and paramedics, including approval of the training curricula and the minimum standards for certification.[26] The regulations promulgated by the Board mandate that in order to receive certification as a paramedic, an applicant must complete a paramedic course approved by the Board and the Tennessee Department of Health, Division of Emergency Medical Services, and achieve a passing score on the written and practical components of the paramedic licensing examination adopted by the Board.[27] The regulations also require that the Board approve the curriculum for paramedic training programs.[28] Paramedic training programs specifically must "meet or exceed the educational objectives and competencies as adopted in the United States Department of Transportation EMT-Paramedic National Standard Curriculum."[29] Pursuant to its accrediting authority, the Board may also permit local fire departments like MFD to create paramedic training programs so long as the programs follow the U.S. DOT paramedic standard curriculum and admit only career paramedics employed by the fire department.[30] The Act also allows "any fire department that operates its own fire training academy . . . the option of permitting a fire fighter recruit to have between three (3) and five (5) years to complete the training for certification as a paramedic."[31]

---

[26] §§ 68–140–303, 68–140-304(1) & (2).

[27] Tenn. Comp. R. & Regs. 1200-12-01-.04(2).

[28] Tenn. Comp. R. & Regs. 1200-12-01-.13(4).

[29] *Id.*

[30] § 68–140–327(a).

[31] § 68–140–327(b).

As mentioned previously, EMS providers performing specified "emergency care techniques or procedures" must possess the proper license, certification, or training.  For example, the regulations permit a certified EMT (or students during training in an accredited program) to administer or use physician controlled devices for

> (1)  treatment of anaphylaxis with epinephrine, respiratory distress with inhaled bronchodilators, suspected chest pain with aspirin and suspected cardiac conditions with lingual or sublingual nitroglycerine;
>
> (2) airway management with Board approved airway procedures;
>
> (3) venipuncture and intravenous fluid therapy with EMS Board approved solutions; and
>
> (4)  treatment of hypoglycemia with blood glucose monitoring and administration of intravenous dextrose solutions.

By contrast, the Tennessee regulations authorize licensed paramedics (or students during training in accredited programs) to utilize the following procedures under medical control:

> (1) perform electrocardiographic monitoring, recognize and treat cardiac dysrhythmias;
>
> (2) perform gastric, esophageal, or tracheal intubation and suction;
>
> (3) administer intravenous solutions or blood products by peripheral venipuncture of scalp, extremities, and external jugular veins or intraosseous infusions, or by pre-established indwelling lines;
>
> (4) administer by oral, parenteral, endotracheal, or other indicated means, medications of any of the following classes of drugs: antiarrhythmic agents, chronotropic agents, vagolytic agents, analgesic agents, alkalinizing agents, vasopressor agents, anticonvulsive agents; and other drugs which may be deemed necessary by the ordering physician.
>
> (5) perform chest decompression; and
>
> (6) perform cricothyrotomy.[32]

---

[32] Tenn. Comp. R. & Regs. 1200-12-01-.04(3).  The regulation defines "medical control" to mean "the instruction and advice provided by a physician and the orders by a physician or nurse authorized under written agreement which define the treatment of a patient, where direct communication, written protocols, or standing orders are provided, and such procedures are in accordance with locally or regionally approved medical practices."  *Id.*

Construing this regulation with the rest of the Act, it is clear that any person providing these types of medical procedures and treatments must possess state-approve training and certification as a paramedic.

Based on the Tennessee Emergency Medical Services Act and its regulations, the Court holds that paramedic training is required by Tennessee law for certification of public and private sector emergency medical workers who provide advanced emergency medical services. The services that only a certified paramedic may perform include the procedures and treatments defined under the Tennessee EMS regulations. It follows that like any other paramedic employed in the public or private sector in the state of Tennessee, MFD fire fighters providing specific paramedic services, namely, care for which paramedic certification is required under Tennessee law, must complete state-mandated training and hold paramedic certification. In the language of § 553.226(b)(1), the paramedic training "is required by law for certification of public and private sector employees within a particular governmental jurisdiction." Having established that MFD fire fighters providing such care must complete state-mandated paramedic training, the Court turns to consider whether the named Plaintiffs in fact provide such care, or were hired to provide such care, as part of their job duties as MFD fire fighters, and therefore, whether they were required by Tennessee law to complete paramedic training.

## 2. Application of the Tennessee Paramedic Training Requirements to the Named Plaintiffs

In order to determine whether the exception in paragraph (b)(1) applies, Defendant must prove that each Plaintiff was hired to perform duties as a paramedic and therefore that each Plaintiff's paramedic training was "required by law for certification of public and private sector

employees within" the state of Tennessee. Based on the record at summary judgment, the Court holds that issues of fact exist about whether the exception in paragraph (b)(1) would apply to the MFD paramedic training requirement in this case. More specifically, questions remain about whether Plaintiffs' attendance outside of regular working hours at paramedic training was required by law for certification within the state of Tennessee. At issue are the actual duties Plaintiffs were hired to perform as MFD fire fighters. If Defendant actually hired Plaintiffs to provide emergency medical services only a certified paramedic could provide, then the paramedic training is arguably required under state law. Thus, the exception in paragraph (b)(1) would apply, and the training time would not be compensable. On the other hand, if Defendant did not hire Plaintiffs to provide paramedic care and required them to hold paramedic certification based on nothing more than MFD policy, then the paramedic training is technically not required under state law. In that case, the exception in paragraph (b)(1) would not apply, and the time would be compensable under 29 C.F.R. § 553.226.

Viewing the record in the light most favorable to Defendant, a reasonable juror might conclude that Defendant hired Plaintiffs to perform duties as paramedics, thereby triggering the state mandate for paramedic training. The evidence shows that Defendant has undertaken the responsibility to provide pre-hospital care and paramedic ambulance services in the City of Memphis. To that end, Defendant adopted a policy that MFD fire fighters hired after October 2007 perform duties both as fire fighters and paramedics, rotating shifts between fire fighting duties and serving on one of the MFD's 33 paramedic ambulance units. In other words, MFD fire fighters were expected to work as paramedics as well as fire fighters. According to the Paramedic Agreement between Defendant and its new hires, the MFD required "Fire Suppression employees hired on or

23

after October 29, 2007 . . . to perform as a paramedic, regardless of rank or position, as a condition of continued employment." MFD Benson testified that even when performing fire fighting duties, MFD fire fighters may respond and provide paramedic services. It is undisputed that MFD fire fighters hired after October 2007 perform paramedic duties only after they have obtained certification from the state of Tennessee. Even so, it is clear that under Tennessee law, municipal fire departments with their own state-accredited paramedic training programs like MFD could hire recruits and permit them as long five years to complete their paramedic training. Based on this evidence about MFD policy, a reasonable juror could find that as a general matter, MFD fire fighters hired on or after October 29, 2007, were expected to perform duties as paramedics once they completed paramedic training and became certified paramedics. As a result, the paramedic training for MFD fire fighters, who were hired on or after October 29, 2007, to perform duties as paramedics, was required by state law and therefore not compensable under 29 C.F.R. § 553.226(b)(1).

At the same time, other evidence in the record casts some doubt about whether as a factual matter, Defendant actually expected all of its new hires to perform duties as paramedics as well as fire fighters. Rather, viewing this evidence in the light most favorable to Plaintiffs, a reasonable juror could find that MFD simply wanted its new hires to hold the paramedic certification but not actually perform duties for which the state required an EMS worker to have paramedic training. Director Benson testified in his deposition about the rationale behind the MFD policy requiring employees hired on or after October 29, 2007, and explained that the MFD faced a critical shortage of paramedics and "difficulty recruiting paramedics to Memphis to meet [the MFD] requirement of

24

paramedics" as well as "difficulty achieving competent paramedics."[33]  Based on the perceived need for additional, qualified paramedics, the MFD decided to initiate its own paramedic training program.[34]  Furthermore, the MFD responded to the paramedic shortage by adopting the policy requiring all employees regardless of rank or position to perform duties as paramedics as a condition of continued employment.  Director Benson testified, for example, that under the policy an MFD officer such as a lieutenant is required to complete paramedic training but is not required to "regularly, around some schedule, perform paramedic duties."[35]  Director Benson explained that lieutenants are not "rotated on the ambulance, but the conditions could exist where those skills are necessary."[36]  Director Benson added that any employee including officers need not work a certain number of hours as a paramedic to keep their paramedic certification but that the MFD policy required employees to nevertheless maintain their certification.[37]

Viewing this evidence in the light most favorable to Plaintiffs, a reasonable juror might conclude that Defendant required the paramedic training simply for the benefit of having a pool of certified paramedics to serve the community.  While undoubtedly such a policy serves a compelling public interest, the training Defendant adopted arguably was not required by the state of Tennessee if the MFD fire fighters never in fact performed duties as paramedics.

---

[33] Benson Dep. 60:11–61:1, June 29, 2011 (D.E. # 22-3).

[34] *Id.*  As previously discussed, the Tennessee EMS Board was authorized to accredit such programs offered through municipal fire departments like the MFD.

[35] *Id.* at 67:19–68:16.

[36] *Id.* at 68:14–16.

[37] *Id.* at 68:17–69:15.

The Court finds that additional questions of fact remain about whether the named Plaintiffs were hired to perform duties as paramedics or whether the MFD policy on paramedic training was even applicable to them. For instance, the record shows that not all named Plaintiffs actually signed the "Availability of Applicant" form that stated that the applicant would be required to become certified as a paramedic as a condition of continued employment. And although 111 of the 118 named Plaintiffs signed the Availability of Applicant form, all but four of those were signed prior to October 2007, when the new policy requiring the paramedic training took effect. As a result, it is not clear that these Plaintiffs were actually subject to the policy requiring the paramedic training for all employees hired on or after October 29, 2007. Also, the record indicates that 47 named Plaintiffs signed EMT-IV and Firefighter I & II Agreements in October or November of 2007 but did not actually sign the Paramedic Agreement, spelling out the MFD policy requiring paramedic training, until September 2008, some months after they were hired. In short, questions of fact remain about whether all named Plaintiffs were actually hired under the new policy requiring MFD fire fighters to perform duties as paramedics, necessitating paramedic certification.

Because questions of fact remain about whether Plaintiffs' paramedic training was "required by law for certification of public and private sector employees within" the state of Tennessee, the Court cannot rule as a matter of law on the issue of Defendant's liability to compensate Plaintiffs for paramedic training. Therefore, to the extent that both parties seek summary judgment on the issue of liability pursuant to 29 C.F.R. § 553.226(b), Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment are **DENIED**.

### 3. DOL Opinion Letters on 29 C.F.R. § 553.226(b)

Both parties rely on DOL opinion letters addressing training time for municipal fire fighters under 29 C.F.R. § 553.226(b).  The Supreme Court has held that DOL opinion letters "lack the force of law," and yet to the extent the DOL opinions are persuasive, they are entitled to respect.[38]  Even though the opinion letters are not binding on the Court, the Court holds that the letters cited by the parties are not dispositive of the issues presented and therefore are not persuasive.  Plaintiffs rely on a 1988 DOL opinion letter in which the DOL concluded that under § 553.226(b), EMT training required for fire fighters by municipal law or policy was compensable.[39]  According to the opinion letter, the DOL was asked to assume that a city required fire fighters to obtain and maintain proper certifications as EMTs as a condition of continued employment.  The training frequently occurred outside of regular working hours and was not voluntarily undertaken by the employees.  Notably, the DOL assumed that the training and certification requirements are "all required by [the] law of the City . . . ."  The DOL opined that the training time was compensable and gave two reasons in support of its conclusion.  First, the exception in paragraph (b)(1) did not apply because the law of the city concerned public employees, i.e. the firefighters, and the DOL assumed that a policy applicable to firefighters would not apply to private sector employees.  Second, the 1988 letter assumed that the training for certification was required under city law only and never considered whether the training was required under state law.  As a result, the DOL stated that the exception in paragraph (b)(2) did

---

[38] *Christensen v. Harris Cnty.,* 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant *Chevron*-style deference . . . . Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' . . . , but only to the extent that those interpretations have the 'power to persuade,' . . . .").

[39] Opinion Letter from Dep't of Labor, Wage & Hour Div. (Nov. 2, 1988), 1988 WL 1524535.

not apply.

The Court finds the 1988 opinion letter unpersuasive because it never addressed whether the EMT training at issue was required under state law. In fact, it appears to the Court that the opinion letter assumed that the training was required only under municipal law and summarily concluded that paragraph (b)(1) of the regulation would not apply. By contrast, the requirements of the paramedic training in the case at bar are established by the state of Tennessee, not the City of Memphis. The Court has construed those requirements to apply to paramedics employed in both the public and private sector, making paragraph (b)(1) applicable. Unlike the scenario in the 1988 opinion letter, there is no evidence in this case that Defendant has imposed the training requirements by municipal law only or added its own additional requirements to training requirements set by the state of Tennessee. For these reasons, the Court finds that the DOL's 1988 opinion letter is not on point.

In support of its position, Defendant relies on a 1999 DOL opinion letter, concluding that EMT certification training was not compensable for municipal fire fighters.[40] According to the facts presented in that letter, a city required its firefighters to have EMT certification through the state even though the state did not require firefighters to also be EMTs. The certification was granted through the state, presumably meaning that the state set the training requirements and standards for the certification. The DOL opined without much analysis that the training time "required to maintain this certification" was not compensable as hours worked.

The Court finds the 1999 opinion letter to have little persuasive value. Although the opinion cited 29 C.F.R. § 553.226, the DOL did not cite the precise language of paragraphs (b)(1) and (2)

_____

[40] Opinion Letter from Dep't of Labor, Wage & Hour Div. (Sept. 30, 1999), 1999 WL 1788163.

and provided only a brief analysis of the regulation. As a result, it is not clear on which exception the DOL opinion based its conclusion. What is more, the precise question posed to the DOL was whether "the EMT training that is required to maintain this certification" was compensable for paramedics.[41] The Court finds that the issue addressed in the opinion letter, the compensability of training time "required to maintain" EMT certification for paramedics, is not the primary issue presented in the case at bar. Here, Plaintiffs seek compensation for the training time required to achieve the initial certification, and not training to maintain the certification. And as already discussed, reasonable minds could differ over whether MFD fire fighters like Plaintiffs were in fact hired to be paramedics. For these reasons, the Court finds that the 1999 opinion letter fails to address the precise issue before the Court.

Therefore, the Court concludes that the DOL opinion letters discussed by the parties are not persuasive and accordingly declines to give them any weight or deference.

## III. General Regulation on Lectures, Meetings, and Training Programs

Both parties have also argued that they are entitled to judgment as a matter of law based on 29 C.F.R. § 785.27. The DOL regulation found at 29 C.F.R. § 785.27 is one of general applicability and assumes that an employee's time spent in attending lectures, meetings, or training programs must be counted as time worked unless the following four criteria are met:

(a) Attendance is outside of the employee's regular working hours;

---

[41] The issue then is largely identical to the issue presented in a subsequent opinion letter in which the DOL reached the same conclusion and opined that time spent by paramedics in state-mandated training for re-certification was not compensable. *See* Opinion Letter from Dep't of Labor, Wage & Hour Div. (Feb. 5, 1990), 1990 WL 10536201.

(b) Attendance is in fact voluntary;

(c) The course, lecture, or meeting is not directly related to the employee's job; and

(d) The employee does not perform any productive work during such attendance.[42]

In this case, the parties dispute whether the paramedic training was in fact voluntary and whether the training was directly related to Plaintiffs' duties as MFD fire fighters. Based on the record before the Court, the Court holds that questions of fact remain about whether Plaintiffs' time spent in training required for paramedic certification meets these two criteria.[43] Therefore, Plaintiffs' Motion for Partial Summary Judgment as to this regulation must be denied.[44]

## A.     Whether Plaintiffs' Attendance at Paramedic Training is in Fact Voluntary

On the issue of voluntariness, the DOL regulations specify that attendance at training is not voluntary "if the employee is given to understand or led to believe that . . . the continuance of his employment would be adversely affected by non-attendance."[45]  Plaintiffs argue that the paramedic training is a condition of continued employment as MFD fire fighters and is therefore not

---

[42] 29 CFR § 785.27

[43] The Court notes that the parties have focused their briefing on the second factor, i.e. whether the training is voluntary, and the third factor, i.e. whether the training is related to each Plaintiff's job. Plaintiffs argue that Defendant cannot prove either of these criteria and as a result the exception created in 29 C.F.R. § 782.27 does not apply. Because the parties have briefed only these two factors, it appears to the Court that there is no dispute that the paramedic training occurred outside of Plaintiffs' regular working hours or whether Plaintiffs perform any productive work during the training. In any event, the Court does not consider these two factors here.

[44] Defendant has not sought summary judgment as to exception in this regulation and actually argues that the regulation is not applicable.

[45] 29 C.F.R. § 785.28.

"voluntary," as the regulation defines the term. Defendant maintains that the training time is voluntary and cites for support the Sixth Circuit's holding in *Chao v. Tradesmen International*. In *Chao*, the Sixth Circuit concluded that where a "training class was a fully disclosed precondition to permanent employment, . . . fulfillment of the requirement [was] 'voluntary' within the meaning of 29 C.F.R. § 785.27(b)."[46] The employer in *Chao* was "a skilled labor leasing company that provides a complete range of workers to construction contractors [known as field employees] on an as-needed basis."[47] One of the employer's requirements for hire as a field employee was completion of an OSHA safety training course.[48] The employer gave prospective employees the option to accept immediate employment if the employee committed to registering for the OSHA course within 60 days and completing the course within a reasonable time.[49] The plaintiffs in *Chao* made such a commitment and alleged that they were entitled to compensation for the time spent in the OSHA training course. The Sixth Circuit disagreed concluding that the training was "voluntary" within the meaning of the regulation, emphasizing that completion of the training was "a fully disclosed precondition of permanent employment."[50]

Here Defendant argues that like the field employees in *Chao*, Plaintiffs were aware that the

---

[46] *Chao*, 310 F.3d 904, 910 (6th Cir. 2002). *But see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 722 (2d Cir. 2001) ("If Kosakow is able to prove that she was attending these courses as a requirement of her employer, not because she was required to do so by the state, then the attendance would not be considered "voluntary," and thus must be compensated under the FLSA. *See* 29 C.F.R. § 785.27.").

[47] *Id.* at 905.

[48] *Id.* at 906.

[49] *Id.*

[50] *Id.* at 910.

paramedic training was a condition of continued employment, and as such the paramedic training was voluntary. Plaintiffs reply that not all Plaintiffs were aware at the time of hire that they would not be compensated for their paramedic training. Plaintiffs argue in their Motion that the *Chao* "court clearly rested its decision on the fact that the workers did not perform any work while at the training course and – contrary to the undisputed factual record here – that the training course was not directly related to the construction worker's job duties." Plaintiffs further suggest that the *Chao* holding does not square with the plain meaning of the regulation's definition of "voluntary" at 29 C.F.R. § 785.27(b).

The Court holds that *Chao* controls the issue of whether Plaintiffs' attendance at the paramedic training was voluntary. The Court finds merit in Plaintiffs' argument that the holding in *Chao* is somewhat at odds with § 785.27(b)'s definition of "voluntary." At the same time, the Sixth Circuit clearly was aware of the regulation's definition and nevertheless determined that the regulation did not reach the "precise issue" presented, "where the employer makes the training a precondition of employment, but allows the applicant to complete the training post-hire, and will ultimately terminate that employment if the condition is not met."[51] As a result, the *Chao* court went beyond the regulation and relied on a persuasive case from the First Circuit which had addressed the issue.[52] Therefore, to the extent that *Chao* addressed the issue presented in the case at bar, this Court is obviously bound to follow *Chao*.

Applying the holding in *Chao* to the evidence presented in this case, the Court holds that as

---

[51] *Id.* at 909.

[52] *Id.* (citing *Bienkowski v. Northeastern Univ.*, 285 F.3d 138 (1st Cir. 2002)).

a matter of law attendance at the paramedic training was in fact voluntary for MFD fire fighters hired on or after October 29, 2007, who were aware of the paramedic training as "a fully disclosed precondition of permanent employment." There is evidence that Defendant made the paramedic training a precondition of employment but allowed new hires at least three years post-hire to complete the paramedic training. Defendant further made completion of the paramedic training a condition of continued employment. To the extent that the paramedic training was "a fully disclosed precondition of permanent employment" as an MFD fire fighter, attendance at the paramedic training was in fact "voluntary" under *Chao*.

Plaintiffs highlight that while aware of the training requirement, not all named Plaintiffs were aware that Defendant would not compensate them for the paramedic training. While Plaintiffs have raised a legitimate question of fact, the Court holds that this dispute is not material to whether attendance at the training was in fact "voluntary" for purposes of § 785.27. Not only is the issue of compensability the ultimate issue in this FLSA dispute, the relevant inquiry under *Chao* is whether completion of the training itself was "a fully disclosed precondition of employment" and not when the training would occur, where the training would occur, the requirements of the training, the duration of the training, or whether employees would be paid for their training time. Therefore, this factual issue has no bearing on the question of whether Plaintiffs' attendance at the paramedic training was in fact voluntary.

Nevertheless, the Court would hasten to add that questions of fact exist as to whether all named Plaintiffs were subject to the new policy on paramedic training and therefore aware of and informed of the training requirement at the time of their hiring. The Sixth Circuit in *Chao* opined that it "might well have evaluated the situation differently if the potential employee had been

unaware and uninformed of this training requirement until after being hired."[53]   Here it is undisputed

that the paramedic training was required only for employees hired on or after October 29, 2007.  An

"Availability of Applicant" form that Plaintiffs signed as applicants for a job with the City stated that

the applicant would be required to become certified as a paramedic.   However, as previously

discussed, the evidence shows that very few named Plaintiffs actually signed the Availability of

Applicant form after Defendant had implemented the paramedic training policy.   Arguably, the

paramedic training was not "a fully disclosed precondition of permanent employment" as an MFD

fire fighter for Plaintiffs hired before the policy went into effect making the training a precondition

of permanent employment.   There is additional evidence that many named Plaintiffs did not sign a

separate Paramedic Agreement detailing the paramedic training requirement until September 2008,

many months after they were hired.   Based on this evidence, a reasonable juror could find that "the

potential employee had been unaware and uninformed of this training requirement until after being

hired" or even that the training requirement was not adopted until after he was hired.   Therefore,

issues of fact exist that preclude a final ruling as a matter of law on the issue of voluntariness.

**B.      Whether the Paramedic Training is Directly Related to Plaintiffs' Jobs**

The parties next dispute whether the paramedic training is directly related to Plaintiffs' job

duties as MFD fire fighters.   The relevant DOL regulation on this subject, found at 29 C.F.R. §

785.29, explains that "training is directly related to the employee's job if it is designed to make the

employee handle his job more effectively as distinguished from training him for another job, or to

---

[53] *Id.* at 910.

a new or additional skill."[54]  The regulation goes on to give the following example: time spent by a stenographer in a course in stenography which will make her a better stenographer is compensable; whereas, time spent by the same stenographer in a course in bookkeeping, which is not directly related to her job, is not compensable.  In other words, "[w]here a training course is instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill, and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidentally improves his skill in doing his regular work."[55]  Plaintiffs argue that their paramedic training is directly related to their job duties an EMS workers and that the skills they develop in the paramedic training enhance their ability to provide EMT care even when they are not working as paramedics.  In response Defendant contends that until fire fighters complete their paramedic training, they are not permitted to perform any medical duties which require the paramedic certificate.

Before the Court can rule on whether the paramedic training is directly related to Plaintiffs' job duties, the Court must first arrive at what Plaintiffs' job duties are.  The Court holds that questions of fact about the job duties Plaintiffs were actually hired to perform preclude summary judgment for either party on this issue.  As previously discussed, the evidence before the Court can be viewed to show that Defendant hired new fire fighters after October 2007 to perform duties both as fire fighters as well as paramedics.  If Defendant in fact hired Plaintiffs to provide paramedic services as MFD fire fighters, then their paramedic training would be directly related to their job duties.  Even though it is undisputed that Plaintiffs do not actually perform as paramedics until their

---

[54] 29 C.F.R. § 785.29.

[55] *Id.*

35

paramedic training is complete, the Court holds that the paramedic "training is intended to make the employee more efficient in his present job," meaning Plaintiffs' jobs as MFD fire fighters who are expected to serve as fire fighters as well as paramedics. In that case, Defendant could not establish this requirement of § 785.27 and the exception to exclude training time as hours worked would not apply.

On the other hand, the evidence before the Court can be viewed to show that Defendant began requiring fire fighters to complete paramedic training just to address a shortage of paramedics. If Defendant hired Plaintiffs as part of a policy to develop a pool of qualified paramedics but did not in fact require Plaintiffs to perform duties for which paramedic training is needed, then the paramedic training would not be directly related to Plaintiffs' job duties. Under those facts, the paramedic training was arguably "instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill." Therefore, the training would not be directly related to Plaintiffs' job duties and that element of the exception to exclude their training time would apply.

The Court holds that fact issues remain as to whether the paramedic training was in fact voluntary and whether the training was directly related to Plaintiffs' job duties as MFD fire fighters. Therefore, neither party is entitled to summary judgment on the applicability of 29 C.F.R. § 785.27 as an exception to compensability of Plaintiffs' time spent in paramedic training. Plaintiffs' Motion for Partial Summary Judgment is **DENIED** as to this issue.

## IV. Liquidated Damages and the Three-Year Statute of Limitations

Finally, in the event liability against Defendant can be established, Plaintiffs seek liquidated damages and a three-year statute of limitations for their FLSA claims. Because the Court has held

that it cannot reach the issue of liability at the summary judgment stage, it declines to address these two issues at this time. Therefore, Plaintiffs' Motion for Partial Summary Judgment on the issues of liquidated damages and the three-year statute of limitations is **DENIED** without prejudice to raise the issues at a later time.

**<u>CONCLUSION</u>**

The Court finds that multiple fact issues remain in this case about the MFD policy requiring paramedic training for employees hired after October 29, 2007. The resolution of these issues will determine whether Plaintiffs' time spent in paramedic training is compensable or whether regulatory exceptions under 29 C.F.R. § 553.226 or 29 C.F.R. § 785.27 would apply. Therefore, Plaintiffs' Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 26, 2012.