**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **JON MISEWICZ et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2593-STA-cgc** |
| | ) | |
| **CITY OF MEMPHIS, TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S RENEWED MOTION FOR
SUMMARY JUDGMENT**

_____

Before the Court is Plaintiffs' Renewed Motion for Partial Summary Judgment (D.E. # 63) and Defendant City of Memphis's Renewed Motion for Summary Judgment (D.E. # 64), both filed on August 6, 2013. Both parties have responded in opposition to the opposing party's Motions, and the moving parties have filed reply briefs. On November 20, 2013, the Court heard oral arguments on the parties' cross-Motions. For the reasons set forth below, Plaintiffs' Motion is **DENIED** and Defendant's Motion is **GRANTED**.

## BACKGROUND

**I. Factual Background**

In this Fair Labor Standards Acts ("FLSA") case, Plaintiffs were at all relevant times City of Memphis fire fighters who seek overtime compensation for training they completed for

1

certification as paramedics.[1]  Both parties have moved for summary judgment on the issue of liability, and Plaintiffs additionally seek judgment as a matter of law on the issue of liquidated damages.  On March 26, 2012, the Court denied the parties' initial cross-motions for summary judgment, holding that genuine issues of fact remained as to Defendant's liability for overtime.  The parties have since pursued additional discovery and have now renewed their Rule 56 Motions.

The following material facts, some of which were set forth in the Court's previous summary judgment order, are not in dispute for purposes of these Motions, unless otherwise noted.  The City has adopted a 28-day FLSA work period.  (Pls.' Statement of Undisputed Facts ¶ 26.)  Memphis Fire Department ("MFD") fire fighters are scheduled to work approximately 214 hours every 28 days.  (*Id.*)  Fire fighters receive additional half-time compensation for regularly scheduled hours worked above the FLSA threshold of 212 hours and time-and-a-half overtime for unscheduled overtime or hours worked outside of the normal schedule.  (*Id.* ¶ 26, 27.)

The MFD provides fire protection services and pre-hospital care for the City of Memphis.  (*Id.* ¶ 1.)  The City has also chosen to provide paramedic ambulance services.  (*Id.*)  The state of Tennessee does not mandate these services.  (*Id.*)  In October 2007, the City instituted a new policy whereby it would require all fire fighters hired after October 29, 2007, to become certified as paramedics (or what is known as EMT-P).  (*Id.* ¶ 4.)[2]  Plaintiffs were hired on or after October 29,

---

[1] The parties agreed at the motion hearing that not all named Plaintiffs continue to be employed with the Memphis Fire Department.  In fact, some named Plaintiffs were apparently discharged (or resigned) when they did not complete their paramedic training within the time allowed under city policy.

[2] Prior to the adoption of the paramedic requirement in 2007, MFD had required all newly-hired fire fighters as of 2001 to achieve EMT-IV certification.  (Pls.' Statement of Undisputed Facts ¶ 3.)  Elsewhere in their motion papers, Plaintiffs refer to the paramedic certifications as "EMT-Advanced."  For purposes of deciding the parties' cross-Motions, the

2007, making them subject to the policy requiring paramedic training.[3]  Just as the state of Tennessee does not require the City of Memphis to provide ambulance services, the state of Tennessee does not require municipal fire fighters to hold a paramedic certificate.  (*Id.* ¶ 5.)  As such, the City has the sole discretion to maintain or discontinue its policy requiring fire fighters to become trained as paramedics.  (*Id.*)

The MFD provides training courses for EMT training, fire fighter training, hazardous materials operations training, and paramedic training.  (*Id.* ¶ 13.)  For training received at the Fire Academy, the City keeps and maintains records documenting what training was received, the hours spent in training, and when the training occurred.  (*Id.* ¶ 28.)  The MFD counts the hours spent attending EMT-IV training, Fire Fighter I Certification training, Hazardous Materials Operations training, and Fire Fighter II Certification Training as hours worked and compensates employees for attending this training.  (*Id.* ¶ 15.)  As for the paramedic training, MFD does not count the hours spent attending training as hours worked and does not compensate employees for attending the training.  (*Id.* ¶ 14.)[4]

In January and February 2007, prior to the adoption of the policy requiring all newly-hired fire fighters to achieve paramedic certification, MFD required its job applicants, including all but

---

Court will assume that both "EMT-P" and "EMT-Advanced" refer to the same state paramedic certificate.

[3] The parties stated their agreement as to these facts in response to the Court's questions at the November 20, 2013 motion hearing.

[4] MFD fire fighters can achieve their paramedic certification either in the MFD's paramedic program or at a community college, though the majority of MFD fire fighters attend the MFD paramedic training course.  (*Id.* ¶ 14.)  It is undisputed that once an employee achieves paramedic certification, the MFD will compensate the employee for continuing education hours (CEU's) provided by the City.  (*Id.* ¶ 15.)

one of the Plaintiffs in this case, to sign an "Availability of Applicant" form when submitting their application for employment.  (*Id.* ¶ 6; *see also* Def.'s Statement of Undisputed Material Facts ¶ 4.)[5] That form required an applicant to agree to the following:

> [Y]ou must successfully complete course work and testing in order to become certified by the State of Tennessee as an Emergency Medical Technician-Intravenous (EMT-IV) and maintain EMT-IV Certification within one (1) year with the Memphis Fire Department, as a condition of continued employment; you must successfully progress through the State of Tennessee Fire Fighter I Certification Program within one (1) year with the Memphis Fire Department and must successfully progress through the State of Tennessee Fire Fighter II Certification Program within three (3) years with the Memphis Fire Department (as specified in NFPA Standards 1001), as a condition of continued employment.  Within three (3) years of employment with the Memphis Fire Department, you must become licensed by the State of Tennessee as a Paramedic (EMT-Advanced) as a condition of continued employment.

> (Pls.' Statement of Undisputed Facts ¶ 6.)[6]

One hundred and eleven (111) of the Plaintiffs signed Availability of Applicant forms.  (*Id.* ¶ 17; Def.'s Statement of Undisputed Material Facts ¶ 4.)  All but four were signed in January or February 2007, before the City officially instituted the paramedic training requirement in October 2007.  (Pls.' Statement of Undisputed Facts ¶ 17.)  As early as 2006, the City's job description and job postings for Fire Recruits listed the paramedic licensure requirement as a condition of continued employment.  (Def.'s Statement of Undisputed Material Facts ¶ 5.)  MFD did not inform the

---

[5] Defendant responds that Plaintiffs have not shown that the practice of requiring applicants to sign an "Availability of Applicant" form began in January and February 2007, only that most of the Plaintiffs signed such a form in January and February 2007.  (Def.'s Resp. to Pl.'s Statement of Fact ¶ 6.)  The Court tends to agree with Defendant's assessment of the evidence.  In any event, the issue is not material to the questions of law presented in the parties' Motions.

[6] Plaintiffs add that applicants who signed the Availability of Applicant form were not hired right away, and some were hired more than two years after completing the form.  (Pls.' Statement of Undisputed Facts ¶ 7.)

applicants at the time they signed the Availability of Applicant form and applied for a position with the MFD that they would be required to attend paramedic training off-duty and without compensation.  (Pls.' Statement of Undisputed Facts ¶ 16.)  The City has no evidence that any Plaintiff knew or understood that they would be required to attend paramedic training off-duty and without compensation at the time they signed the Availability of Applicant form.  (*Id.*)  Some Plaintiffs assumed the paramedic training would take place while they were on duty.  (*Id.*)

Once an applicant was hired, the MFD required the new hire to sign the following agreements: an EMT-IV agreement, a Firefighter I and II agreement, and a Paramedic agreement.  (*Id.* ¶ 8.)[7]  The EMT-IV agreement stated that a trainee known as a "Fire Recruit" must, as a condition of continued employment, attend and successfully complete EMT-IV training during Fire Recruit training; be certified as EMT-IVs within one year; and maintain their EMT-IV certification.  (*Id.* ¶ 9.)  The Fire Fighter I and II agreement stated that a Fire Recruit had to complete, as a condition of continued employment, Fire Fighter I requirements within one year; Hazardous Materials Awareness I requirements within one year; Fire Fighter II requirements within three years; and Hazardous Materials Operations II requirements within three years.  (*Id.* ¶ 10.)  As previously mentioned, the City provided the required training at the Fire Academy and compensated employees

---

[7] Upon being hired, Plaintiffs were given and required to sign an acceptance letter offering them the position of "Fire Recruit."  (*Id.* ¶ 21.)  According to the acceptance letter, a Fire Recruit's employment was subject to the following conditions: (a) completion of a one-year probationary period; (b) completion of the 20-week training program at the Memphis Fire Training Academy including successfully completing course work and testing to become certified by the state of Tennessee as an Emergency Medical Technician; (c) warning that failure to graduate from the Academy would result in termination from MFD; (d) advising that employees must live within the Memphis city limits; and (e) requiring employees to hold a Class (D), Endorsement (F) on their driver's license.  (*Id.*)  The letter did not mention the paramedic certification requirement.  (*Id.*)

for time spent in this training.  The Paramedic agreement provided that as a condition of continued employment, fire suppression employees had to become licensed as a paramedic (EMT-P) within three years; perform duties as a paramedic; and maintain EMT-P certification.  (*Id.* ¶ 11.)[8]  At some point in either 2010 or 2011, the MFD altered the paramedic training requirement to give employees three years and six months to complete the initial certification.  (*Id.*)  Defendant adds that the Paramedic agreement required fire fighters to "become licensed by the State of Tennessee" and stated explicitly that "[f]ailure to become licensed by the state of Tennessee as a Paramedic . . . will be just cause for termination."  (Def.'s Resp. to Pls.' Statement of Fact ¶ 11.)

The parties disagree about whether Plaintiffs understood that obtaining paramedic certification was a "precondition to permanent employment."  Plaintiffs assert that the Paramedic agreement contains no such precondition.  (Pls.' Statement of Undisputed Facts ¶ 12.)  Fire fighters became permanent employees one year after their hire date, regardless of whether they had already completed their paramedic training.  (*Id.*)  Defendant counters that while the Paramedic agreement never described certification as "a precondition of permanent employment," Plaintiffs were on notice of the paramedic certification requirement prior to being hired.  (Def.'s Resp. to Pls.' Statement of Fact ¶ 12.)  The requirement was disclosed in the Availability of Applicant form and in the Notice of Job Postings, which set out in detail the requirements for the Fire Recruit position.  (*Id.*)  Defendant contends then that to the extent Plaintiffs knew about the paramedic certification requirement before they were hired, certification was a precondition to permanent employment.  (*Id.*)

---

[8] Certified paramedics in Tennessee must recertify every two years.  (*Id.* ¶ 11.)  The agreement further stated that recertification would be at the employee's own expense.  (*Id.*)  It did not state that the initial certification will be at the employee's own expense or that training will be performed off-duty and without compensation.  (*Id.*)

Several of the Plaintiffs who were deposed testified that they understood the paramedic certification requirement was a precondition to permanent employment.  (*Id.*)

Forty-seven (47) of the Plaintiffs were given, and required to sign, the EMT-IV and Firefighter I & II agreements at the time they were hired in October and November of 2007 but were not given, or required to sign, the Paramedic agreement until September 2008.  (Pls.' Statement of Undisputed Fact ¶ 18.)  In September 2008, MFD sent an email to MFD management, instructing them to ensure that all personnel hired after October 29, 2007 had signed a Paramedic agreement. (*Id.* ¶ 19.)  Some employees were surprised when they were forced to sign the Paramedic agreement anywhere from six months to almost a full year after they were hired.  (*Id.*)  Approximately 74 Plaintiffs signed the Paramedic agreement in September 2008.  (*Id.*)  The parties disagree over whether employees were forced to sign the agreement upon threat of termination.  (*Id.*; Def.'s Resp. to Pls.' Statement of Fact ¶ 19.)  Defendant disputes these assertions in part, by asserting that the Paramedic agreement reminded Plaintiffs of the paramedic certification requirement (of which they were already aware) and that Plaintiffs were not forced to sign the agreement.  (*Id.*)  Only 33 Plaintiffs were given, and required to sign, the Paramedic agreement at time they were hired by MFD, on the same date that they were given and required to sign the EMT-IV and Firefighter I & II agreements.  (Pls.' Statement of Undisputed Facts ¶ 20.)

Plaintiffs were initially hired as Fire Recruits.  (*Id.* ¶ 22.)  Their probationary status ended one year after their hire date, at which time they were employed as either a Fire Private I, Fire Private II, or Fire Fighter/EMT.  (*Id.*)  Defendant responds that even though Plaintiffs had the title of "Fire Recruit" at the time they were hired, Plaintiffs had notice from the Availability of Applicant form and the Job Postings that they were also required to obtain their paramedic certification.  (Def.'s

7

Resp. to Pls.' Statement of Fact ¶ 22.)   MFD did not inform Plaintiffs at the time they were hired that the MFD would not count the hours spent attending paramedic training as hours of work or that the time would not be compensable.  (Pls.' Statement of Undisputed Facts ¶ 23.)[9]

After fire fighters hired after October 2007, including Plaintiffs, achieved their paramedic certification, they rotate between providing fire fighting activities and paramedic activities during the course of their shifts.  (*Id.* ¶ 25.)  MFD fire fighters are cross-trained to provide both EMS and fire suppression services.  (Def.'s Statement of Undisputed Facts ¶ 12.)  On a typical  24-hour shift, MFD fire fighters spend 12 hours on an ambulance serving as paramedics and 12 hours on a fire unit serving as fire fighters.  (*Id.*)  When the Plaintiffs who became certified as paramedics are assigned to work on fire engines or fire trucks, they may respond and provide paramedic-level medical services even though they are not on an ambulance.  (Pls.' Statement of Undisputed Facts ¶ 23.)  MFD fire fighters have a duty to perform paramedic-level functions regardless of the type of equipment to which they are assigned.  (Def.'s Resp. to Pls.' Statement of Fact ¶ 25.)

Between October 2007 and June 1, 2013, MFD fire fighters responded to 563,272 emergency medical services incidents and 131,113 fire suppression incidents. (Def.'s Statement of Undisputed Facts ¶ 11.)  These EMS calls required MFD fire fighters to administer emergency medical treatment up to and including advanced emergency medical treatment, services which require paramedic certification.  (*Id.*)  In fact, fire fighters hired after October 2007, like Plaintiffs, who have obtained their paramedic certification consistently provide emergency medical services within the scope of

---

[9] Some Plaintiffs testified that they are uncertain whether they would have applied for or accepted employment with MFD had they been told that the MFD would not count the hours spent attending paramedic training as hours of work and that the time would be non-compensable.  (*Id.* ¶ 24.)

their licensure, including advanced medical services only a paramedic can perform. (*Id.* ¶ 13.) Fire fighters hired after October 2007, including Plaintiffs, who have obtained their paramedic certification are required to perform the following emergency medical services, among others: electrocardiographic monitoring; treating cardiac dysrhythmias; performing gastric, esophageal or tracheal intubation and suction; administering intravenous solutions or blood products by peripheral venipuncture of the scalp, extremities, and external jugular veins; intraosseous infusions; and administering antiarrhythmic agents, chronotropic agents, vagolytic agents, alkalizing agents, vasopressor agents, and anticonvulsive agents by oral, parenteral, endotracheal, or other means. (*Id.* ¶ 15.)

The state of Tennessee sets the minimum requirements, including classroom and practical training, necessary to obtain the paramedic certification. (*Id.* ¶ 9.) Whether an employee participates in the MFD program or a community college course, the paramedic training program consists of two mandatory elements: classroom instruction and clinical work. (Pls.' Statement of Undisputed Facts ¶ 29.) An employee may need up to 18 months to complete the program. (*Id.*) During the clinical portion of the program, Plaintiffs perform actual emergency response paramedic services at hospitals or on MFD ambulances. (*Id.* ¶ 30.) However, Plaintiffs were not compensated for the hours they spent performing clinical work and providing emergency medical services during the clinical portion of their paramedic training. (*Id.* ¶ 32.)

## II. Plaintiffs' Renewed Motion for Partial Summary Judgment

In their Renewed Motion for Partial Summary Judgment, Plaintiffs seek judgment as a matter of law on the issue of liability only. Plaintiffs maintain that as a general rule employees are entitled to compensation for time spent in training such as the paramedic training undertaken by Memphis

fire fighters.  As such, the City of Memphis is liable for the compensation Plaintiffs should have received for the paramedic training.  Plaintiffs assert that in order to avoid liability, Defendant must prove that two different FLSA exceptions contained in DOL regulations apply.

First, Defendant must show that the criteria under 29 C.F.R. § 785.27 and the general exception for attendance at lectures, training programs, and similar activities are satisfied.  Defendant has the burden to prove, among other things, that Plaintiffs' attendance at the paramedic training was voluntary and that Plaintiffs did not perform any productive work during the attendance.  Plaintiffs argue that Defendant cannot prove that Plaintiffs voluntarily undertook the training because Defendant did not fully disclose the training requirement to Plaintiffs before Plaintiffs accepted positions with MFD.  Furthermore, the evidence shows that Plaintiffs performed productive work during the clinical portion of their paramedic training program.  Thus, the exception at § 785.27 cannot apply.

Second, in addition to proving the general exception to compensability, Defendant must also prove that the specific exception at 29 C.F.R. § 553.226(b)(1) applies.  According to Plaintiffs, Tennessee law does not require "that both public and private sector fire fighters, or even fire fighter/EMTs, be certified as paramedics." Pls.' Mem. in Support 16.  Plaintiffs argue then that without proof that both FLSA exceptions apply, they are entitled to summary judgment on the issue of liability.[10]

In its response in opposition to Plaintiffs' Motion, Defendant argues that it need only satisfy

---

[10] Plaintiffs further contend that an award of liquidated damages is proper because the City cannot show that it made a good faith decision not to pay Plaintiffs for their paramedic training and that the City had reasonable grounds for believing its decision did not violate the FLSA.  (Pls.' Mem. in Support 16–20.)  Because Defendant is entitled to judgment as a matter of law on the liability issue, the Court need not reach the issue of damages.

one of the relevant exceptions for training time under the FLSA, not both as Plaintiffs argue.  The Court addressed this issue in its first summary judgment order and rejected Plaintiffs' position and its reliance on a 1988 opinion letter issued by DOL.  The Court found the opinion letter to be unpersuasive and held that Defendant could shield itself from liability if it could meet the requirements of the general exception for training time or the more specific exception for training time for public sector police and fire fighters.  Defendant argues that the specific exception in 29 C.F.R. 553.226(b)(1) applies here because Plaintiffs' paramedic training is required under Tennessee law.  Although the City of Memphis has discretion to create policy, "once the City instituted its paramedic certification requirement for fire recruits, it has no power to change the minimum requirements for obtaining paramedic certification, which are set by the State of Tennessee." Def.'s Resp. in Opp'n 3 (D.E. # 67).

Defendant next argues that even if § 553.226(b)(1) did not apply, Defendant is still entitled to summary judgment under the exception at 29 C.F.R. § 785.27.  Defendant emphasizes that each Plaintiff voluntarily attended the paramedic training because the requirement was a fully-disclosed condition to continued employment as an MFD fire fighter.  Moreover, the clinical portion of the paramedic training program did not entail productive work.  Therefore, Defendant asserts that Plaintiffs' Motion should be denied.[11]

### III. Defendant's Renewed Motion for Summary Judgment

In its Renewed Motion for Summary Judgment, Defendant seeks judgment as a matter of law

---

[11] Plaintiffs have filed a reply (D.E. # 69) in support of their Renewed Motion.  Likewise, Defendant has filed a reply (D.E. # 68) in support of its Renewed Motion.  Because the arguments advanced by the parties' in their reply briefs have been thoroughly developed in their previous motions, in the instant Motions, and at the motion hearing, the Court need not review all of the points and authorities raised in the reply briefs here.

on the liability issue.  As already discussed, the Court had previously concluded that the City had only to prove the applicability of one FLSA exception (and not both of them) in order to escape liability for compensating Plaintiffs for their paramedic training.  Defendant argues that in this case the requirements of 29 C.F.R. § 553.226(b)(1) are satisfied, making summary judgment proper. According to Defendant, the undisputed evidence shows that Plaintiffs actually perform as paramedics in the normal course of their duties as MFD employees.  Plaintiffs are required to perform the medical services listed in the Tennessee EMS regulations and the Emergency Medical Services Act, procedures which only a certified paramedic can perform.  As a result, Plaintiffs' specialized paramedic training is required by law for certification of public and private sector employees within the state of Tennessee and is thus not compensable under the FLSA.  Having satisfied the DOL regulations specific exception for police and fire fighting training, Defendant argues that it is entitled to judgment as a matter of law.

In their response in opposition, Plaintiffs maintain that based on the text of § 553.226, Defendant must establish both exceptions in order to avoid liability for Plaintiffs' paramedic training time.  Plaintiffs reiterate their arguments that Defendant cannot avail itself of the general exception under § 785.27 because Plaintiffs' attendance at the paramedic training was not voluntary and Plaintiffs performed productive work during the clinical portion of their training.  As for the specific exception under § 553.226, Plaintiffs continue to argue that the state of Tennessee did not require them to attend paramedic training.  According to Plaintiffs, each of them was hired as a "Fire Recruit" and not a "Fire Fighter/Paramedic."   Plaintiffs' job title changed to "Fire Fighter/Paramedic" only after they completed their paramedic training. The Tennessee Commission on Fire Fighting does not require fire fighters in Tennessee to be trained or certified as paramedics.

In other words, "paramedic certification and training is not legally required of employees certified as fire fighters in the State of Tennessee." Pls.' Resp. in Opp'n 5 (D.E. # 66). Plaintiffs caution that "public employers could make all certification training non-compensable by simply declaring that the training at issue is required of its employees and then, once the employee obtains such training, changing their job title and requiring them to function in that capacity." *Id.* at 6. Plaintiffs argue for the first time in their response brief that § 553.226(b)(1) actually addresses only the compensability of "recertification" training. Therefore, Plaintiffs continue to assert that Defendant is not entitled to summary judgment on the issue of liability.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[13] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[14] and the "judge may not make credibility determinations or weigh the evidence."[15] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not

---

[12] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[15] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

13

rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[16]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[17]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[18]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[19]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[20]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]

## ANALYSIS

The Court holds that Defendant is entitled to judgment as a matter of law on the issue of liability because an exception to FLSA's general rule of compensability applies to Plaintiffs' paramedic training.  The Court exhaustively discussed the FLSA and the applicable DOL regulations

---

[16] *Celotex*, 477 U.S. at 324.

[17] *Matsushita*, 475 U.S. at 586.

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[19] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[20] *Anderson*, 477 U.S. at 251–52.

[21] *Celotex*, 477 U.S. at 322.

implementing the FLSA in its order dated March 26, 2012.  The Court need not recite all of its previous conclusions here.  Insofar as the parties' Renewed Motions for Summary Judgment brief some of the same issues the Court has already decided, the Court finds no reason to reconsider its earlier rulings.  More specifically, Plaintiffs have argued in their briefing on the Renewed Rule 56 Motions that in order to avoid liability under the FLSA, the City of Memphis must establish that two exceptions set forth in the DOL regulations implementing the FLSA apply to the paramedic training at issue in this case.   However, the Court concluded in its March 26, 2012 order that while both exceptions are relevant, "Defendant need not establish that both exceptions apply" and that "if the undisputed evidence establishes any of the exceptions to compensability, then the exception will shield Defendant from any liability to Plaintiffs for their time spent in the paramedic training."[22]  The Court's holdings from its prior decision now constitute the law of the case.[23]

In their briefing on the Renewed Motions, Plaintiffs have nevertheless argued that Defendant must prove both exceptions in order to avoid liability.  Although Plaintiffs state that they renew this argument for the purpose of preserving it for appeal, Plaintiffs go on to contend that a plain reading of § 553.226 supports its construction.  It is true that paragraph (a) of the regulation begins by stating that "[t]he general rules for determining the compensability of training time under the FLSA are set forth in §§ 785.27 through 785.32 of this title."[24]  However, the regulation further states in paragraph

---

[22] *Misewicz v. City of Memphis, Tenn.*, 864 F. Supp. 2d 688, 696 (W.D. Tenn. 2012).

[23] *Bench Billboard Co. v. City of Covington, Ky.*, No. 12-5915, 2013 WL 5942230, at *6 (6th Cir. Nov. 1, 2013) ("Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case.") (quoting *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 400 (6th Cir. 2012)).

[24] 29 C.F.R. § 553.226(a).

(b): "While time spent in attending training required by an employer is normally considered compensable hours of work, following are situations where time spent by employees of State and local governments in required training is considered to be noncompensable."[25]  The Court finds that nothing from the face of the regulation supports Plaintiffs' construction that both exceptions must be proven.[26]  Therefore, Plaintiffs have not shown why the Court should reconsider its previous holding on the proper reading of § 553.226.

Turning to the merits of the parties' arguments, the Court concludes that the exception set forth in § 553.226(b)(1) applies under the facts presented.  Based on the undisputed facts at summary judgment, the Court holds that Plaintiffs' paramedic training was "required by law for certification of public and private sector employees within a particular governmental jurisdiction."  Paragraph (b)(1) of § 553.226 reads in full

> Attendance outside of regular working hours at specialized or follow-up training, which is required by law for certification of public and private sector employees within a particular governmental jurisdiction (e.g., certification of public and private emergency rescue workers), does not constitute compensable hours of work for public employees within that jurisdiction and subordinate jurisdictions.

In light of the evidentiary record before the Court and counsel's clarifications at the motion hearing,

---

[25] § 553.226(b).

[26] As a policy matter, the rule proposed by Plaintiffs would actually make it more difficult for a public sector employer such as a municipal fire department to avoid FLSA liability than a private sector employer.  Whereas the private sector company would need to meet the requirements of "§§ 785.27 through 785.32" to avoid liability, the fire department would need to clear both the general regulatory hurdles as well as the specific requirements of § 553.226.  This seems to be at odds with counsel for Plaintiffs concession at the motion hearing that the exception at § 553.226 was intended to shield public employers from liability for overtime compensation.

the Court finds that no genuine dispute exists as to the following material facts.[27]  Plaintiffs were hired on or after October 29, 2007, and were subject to the City of Memphis's policy requiring paramedic training for all employees hired on or after October 29, 2007.  All Plaintiffs have actually undertaken mandatory paramedic training as a condition of their continued employment with MFD.  Approximately five Plaintiffs were terminated or resigned their positions after they failed to complete the paramedic training within the time permitted under MFD policy.   Upon completion of their paramedic training, all other Plaintiffs currently perform as paramedics during the normal course of their duties with MFD.  These undisputed facts establish that Plaintiffs were hired as paramedics and actually perform as paramedics in the line of duty.

For the reasons stated in the Court's previous summary judgment order, Tennessee law required Plaintiffs, much like any public or private sector employee performing paramedic-level care,[28] to obtain paramedic certification by attending the training mandated for paramedics under Tennessee law.  As such, Plaintiffs' attendance at the paramedic training "does not constitute

---

[27] The Court would point out that in its March 26, 2012 order, the Court determined that genuine issues of material fact precluded judgment as a matter of law in favor of either party.  In particular, the Court noted that "a reasonable juror might conclude that Defendant required the paramedic training simply for the benefit of having a pool of certified paramedics to serve the community" and so "the training Defendant adopted arguably was not required by the state of Tennessee if the MFD fire fighters never in fact performed duties as paramedics."  *Misewicz v. City of Memphis, Tenn.*, 864 F. Supp. 2d 688, 702 (W.D. Tenn. 2012).  The parties have now engaged in another round of discovery and agree that Plaintiffs in fact perform duties as paramedics.

[28] The Court thoroughly discussed what constitutes "advanced emergency medical services" under the Tennessee Emergency Medical Services Act and the Tennessee EMS regulations in its March 26, 2012 order.  *Id.* at 699.  At the motion hearing, Plaintiffs argued that the paramedic training does not qualify as "specialized" training for purposes of § 553.226.  Plaintiffs have also argued that the exception at § 553.226 applies only to "recertification" training such as continuing education.  The Court finds these arguments to be unsupported and otherwise unconvincing.

compensable hours of work for public employees within" the state of Tennessee.  Plaintiffs continue to argue that "paramedic training is not required by law for fire fighters."[29]  Plaintiffs' contention is true as far as it goes; there is no requirement under Tennessee law that fire fighters must also be certified as paramedics.  However, the undisputed evidence shows that the MFD did not hire Plaintiffs to perform simply as fire fighters but to perform as both fire fighters and paramedics.  Put another way, Plaintiffs wear two hats in the course of their employment with the MFD: fire suppression and paramedic first-responders.  Each role requires separate and distinct certifications and training, which is defined and required by the state of Tennessee.  A certified fire fighter could no more perform duties as a paramedic without the state-mandated training than a certified paramedic could perform duties as a fire fighter without the proper training.  The fact that Plaintiffs perform work in two different capacities is underscored by the undisputed facts that Plaintiffs work 24-hour shifts divided equally between fire protection services and paramedic duties and that in six years since Plaintiffs were hired, the MFD has responded to five times the number of calls for medical services as the numbers of calls for fire suppression services.  It cannot be said then that the MFD hired Plaintiffs simply to perform as fire fighters and that their paramedic functions were only ancillary or incidental to their normal employment.

Plaintiffs also make much of the fact that they performed duties as paramedics only after they had completed their training and achieved their state certification.  Plaintiffs emphasize that their job titles did not become "Fire Fighter/Paramedic" until they had finished their paramedic training, suggesting that the paramedic training was not actually required for their jobs as "Fire Recruits" or "Fire Privates."  However, the Court finds these facts to be less relevant to the question of whether

---

[29] Pls.'s Mot. for Partial Summ. J. 14 (D.E. # 63-1).

Plaintiffs' "[a]ttendance outside of regular working hours at specialized or follow-up training" was "required by law for certification of public and private sector employees" alike.  The dispositive issue is not what limited duties Plaintiffs performed after their initial hire but what duties the MFD actually hired them to perform upon completion of all of their training.  To the extent that Plaintiffs were hired to serve as fire fighters and paramedics, Plaintiffs' paramedic duties required state certification before Plaintiffs could perform them.  As the Sixth Circuit has noted, "[w]e do not see why the employer should be penalized for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job when the employer could just as easily withhold employment until successful completion of all the job requirements."[30]  In the context of paramedic training, the Tennessee Emergency Medical Services Act, Tenn. Code Ann. § 68–140–301 et seq., specifically allows "any fire department that operates its own fire training academy . . . the option of permitting a fire fighter recruit to have between three (3) and five (5) years to complete the training for certification as a paramedic."[31]  The fact then that Plaintiffs were not performing as paramedics during the time they completed their paramedic training does not alter the Court's analysis.

As for Plaintiffs' remaining arguments about the general exception defined in 29 C.F.R. § 785.27, the Court need not reach the issue because Defendant has satisfied the requirements of the specific exception under § 553.226(b)(1).

---

[30] *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 910 (6th Cir. 2002).

[31] Tenn. Code Ann. § 68–140–327(b).

## CONCLUSION

For the reasons set forth herein and in the Court's previous summary judgment order, Plaintiffs' Motion for Partial Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 19, 2013.